LAVINIA LALLY, Respondent, v. EMILIE L. CRONEN, Individually and as Executrix of CATHERINE M. LALLY, Deceased, Appellant, Impleaded with Others.

Contract — specific performance — will — decedent's estate — evidence — action to compel specific performance of contract to make mutual wills — testimony by plaintiff of conversations in presence of testatrix incompetent to establish her acquiescence and consent — plaintiff must establish that minds of parties met on precise terms of agreement — failure to prove mutuality of assent fatal — knowledge of revocation of will by testatrix notice thereof — action must fail where it appears plaintiff had knowledge of revocation in ample time to change her own will before death of testatrix.

1. In an action to compel specific performance of an alleged contract between plaintiff, defendant individually and testatrix, to make mutual wills, irrevocable without notice to the others, testimony of plaintiff of conversations between herself and defendant in the presence of testatrix are incompetent, under section 347 of the Civil Practice Act, to establish acquiescence and consent of the dead woman from her presence and silence on these occasions.

2. In such an action plaintiff must furnish proof that the minds of the parties met on the precise terms of the agreement under which the mutual wills were executed. This is not established by proof that testatrix agreed to make a will irrevocable *without the consent* of plaintiff and defendant, where plaintiff relies on and testified to a mutual agreement to make wills irrevocable *without notice to the others*. An agreement to make mutual wills revocable only by consent is not the same as an agreement to make mutual wills revocable on notice. The element of mutuality of assent is, therefore, lacking.

3. In any event, assuming the contract to be as plaintiff testifies, she has not maintained her cause of action. Under such a contract she was entitled to notice of the revocation by testatrix of her will, but, it appearing that plaintiff had knowledge that a new will had been made in ample time for her to change her own or take other action before the death of testatrix, she was not in any way prejudiced by the revocation. Knowledge is the equivalent of notice.

*Lally* v. *Cronen*, 220 App. Div. 253, reversed.

(Argued November 30, 1927; decided January 10, 1928.)

APPEAL, by permission, from a judgment of the Appelfate Division of the Supreme Court in the second judicial department, entered April 8, 1927, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Charles H. Kelby, Morris L. Golieb* and *Charles W. Stapleton* for appellant. To establish an agreement for mutual wills and to defeat the right to revoke a will, there must be full and satisfactory proof of the agreement, which cannot be supplied by presumption. Such an agreement is not shown by the fact that persons make similar wills with cross-provisions in favor of the survivor or survivors. (*Edson* v. *Parsons*, 155 N. Y. 555; *Rastetter* v. *Hoenninger*, 214 N. Y. 66; *Wallace* v. *Wallace*, 216 N. Y. 28; *Hermann* v. *Ludwig*, 186 App. Div. 287; 229 N. Y. 544.) Notice of revocation was given. (*Stone* v. *Hoskins*, L. R. 1905, Prob. 194; Alexander on Wills, § 86; *Canada* v. *Ihmsen*, 43 A. L. R. 1010.) The plaintiff was disqualified as a witness in her own behalf under section 347 of the Civil Practice Act. (*Talbot* v. *Laubheim*, 188 N. Y. 421; *Albany Savings Bank* v. *McCarty*, 149 N. Y. 71; *Franklin* v. *Kidd*, 219 N. Y. 409; *Ralley* v. *O'Connor*, 71 App. Div. 328; 173 N. Y. 621; *Brady* v. *Donohue*, 139 N. Y. Supp. 851; *Hurley* v. *Macey*, 94 App. Div. 9; *Lerch* v. *Brasher*, 104 N. Y. 157; *Griswold* v. *Hart*, 205 N. Y. 384; *Kings County Trust Co.* v. *Hyams*, 242 N. Y. 405; *Matter of Kelly*, 238 N. Y. 71; *Nay* v. *Curley*, 113 N. Y. 575; *Clift* v. *Moses*, 112 N. Y. 426.)

*Max L. Schallek* for respondent. An agreement based upon a valuable consideration to execute mutual wills is enforcible in equity if revoked without notice, and the death of the party breaking the contract is not such notice. (*Stewart* v. *Todd*, 190 Iowa, 283; *Brown* v. *Webster*, 90 Neb. 591; *Corcoran* v. *Kennedy*, 177 App. Div. 63; *Hermann* v. *Ludwig*, 186 App. Div. 287; 229 N. Y. 544.) The rulings upon evidence by the court were proper and

no error can be predicated thereon. (*Kissinger* v. *Quirin*, 206 App. Div. 126; *Matter of Eno*, 196 App. Div. 131; *Greer* v. *Greer*, 58 Hun, 651; *Hamlin* v. *Stevens*, 59 App. Div. 522; *Pinney* v. *Orth*, 88 N. Y. 447; *Cowan* v. *Davenport*, 30 App. Div. 130.)

POUND, J. The action is in equity. Plaintiff is a half-sister of the defendant Cronen and a stepdaughter of the latter's mother, Catharine M. Lally, deceased. She is a member of the New York bar and was in active practice for some years before and after the year 1901. The complaint alleges a contract made between the plaintiff, the defendant Cronen and Catharine M. Lally, deceased, whereby " it was mutually agreed that all property belonging to any or either of them should pass upon the death of any or either of them to the survivors and that they would execute mutual wills, and not revoke the same during their lifetime *without notice to the others.*" It further alleges the execution of such wills by the three parties to the agreement and that Catharine M. Lally, with the knowledge and consent of defendant Cronen, made a new will in breach of the agreement in favor of defendant Cronen without notice to plaintiff and in violation of her rights. Judgment by way of specific performance is demanded for one-half of the property of the deceased Mrs. Lally, now in the hands of the defendant individually or as executrix of her mother's will.

On April 18, 1901, the parties made identical wills. Each left her property to the other two. In 1908 new wills were made to the same effect. In 1913 Mrs. Cronen and Mrs. Lally made their wills leaving plaintiff out. Mrs. Lally left all her property to Mrs. Cronen. Plaintiff was not notified of the change but subsequently learned of it. On March 28, 1922, she obtained Mrs. Lally's signature to a new will which again provided for her and Mrs. Cronen equally. Mrs. Lally was, however, incompetent to make a will and after her death, on

January 8, 1923, probate was refused the later will and the Cronen will was admitted to probate. Plaintiff thereupon brought this action.

Although plaintiff claims to have rendered valuable professional services to her stepmother and half-sister and that such services, as well as mutual love and affection, were the consideration for their contract to make mutual wills in her favor, her claim is, not that the wills were irrevocable, but that they were irrevocable *without notice to the others.*

The contract to make mutual wills and the consideration therefor are established as to Mrs. Cronen by plaintiff's evidence of conversations between plaintiff and her half-sister. Some of these conversations were in the presence of the testatrix Mrs. Lally, some perhaps, were not. They were evidence against Mrs. Cronen in either event but they were evidence against Mrs. Lally in neither event, either because she was absent or because incompetent under section 347 of the Civil Practice Act, as evidence of personal transactions of plaintiff with a deceased person against whose estate she is asserting a claim. (*Matter of Kelly*, 238 N. Y. 71.) It is sought to establish acquiescence and consent of the dead woman from her presence and silence on these occasions. The evidence has no other purpose.

As against the sister, the evidence is of an agreement based on a consideration to make a mutual will that neither could change without notice to the other. The competent evidence against the mother, Mrs. Lally, consists of her admissions. They are testified to by two witnesses. Abner Stupel was a clerk in plaintiff's law office. In June, 1901, he was fifteen years old. He says that he then had a talk with Mrs. Lally about the legal services that plaintiff was rendering for herself and the others and the absence of plaintiff from her office and business in connection therewith. She said: " You know Pinky [Mrs. Cronen], Vinie [plaintiff] and

myself made wills, mutual wills, and *we can't change those wills without the consent of the others*, and whatever she loses by reason of being in California (on the business of the family) she and Pinky will make up when I die, of whatever money I leave."

Tillie C. Cook heard a conversation in August, 1901, between her father and Mrs. Lally in San Francisco. The subject was the legal services rendered by plaintiff for her benefit. The fact of a will was mentioned. The witness testified that Mrs. Lally said: " Vinie [plaintiff] will not put in a bill for compensation, because we talked it over before we came out here and there was a will, drawn at that time before we left New York." Witness' father suggested that a will could be changed. Mrs. Lally replied " Why no.  We can't break our wills. These wills are mutual wills and we can't break them *without consulting and advising with the other one too*."

Giving to the evidence of these two witnesses their fullest probative force, it establishes an agreement on the part of Mrs. Lally to make a will irrevocable *without the consent* of plaintiff and Mrs. Cronen.  Plaintiff relies on a mutual agreement to make wills irrevocable *without notice to the others*.

The question is whether the agreement to make mutual wills has been competently established.  No doubt a sufficient consideration has been shown for such an agreement and mutual wills were made in reliance upon some kind of an agreement between the parties.  Plaintiff must, however, furnish proof that the minds of the parties met on the precise terms of the agreement under which the mutual wills were executed.

" As a will an instrument is revocable at pleasure, but as a contract, if supported by an adequate consideration, it is enforcible in equity."  (*Rastetter* v. *Hoenninger*, 214 N. Y. 66, 71.)  " The evidence required to show a contract by one deceased, to dispose of his property in a certain manner after his death, must be clear and convincing, or

it will not be regarded as sufficient." (*Wallace* v. *Wallace,*
216 N. Y. 28, 39.) The agreement depended upon for
the award of the relief demanded must be clearly and
definitely established by full and satisfactory proof. " To
attribute to a will the quality of irrevocability demands
the most indisputable evidence of the agreement, which is
relied upon to change its ambulatory nature, and that
presumptions will not, and should not, take the place of
proof." (*Edson* v. *Parsons,* 155 N. Y. 555, 568.)

An agreement to make mutual wills revocable only by
consent is not the same as an agreement to make mutual
wills revocable on notice. Mrs. Lally may have been
willing to make a will on consideration that the wills
of plaintiff and Mrs. Cronen should not be revoked without
her consent. She may have been willing or unwilling to
make a will in their favor when they reserved the power
to revoke their wills in her favor upon notice. We take
the intention of Mrs. Lally from the language she used.
Mutual assent is essential to the formation of a contract.
It is not established that Mrs. Lally assented to an
agreement to make mutual wills revocable on notice.
The result is that element of mutuality of assent is
lacking. One contract is proved as to her; another as
to Mrs. Cronen.

The plaintiff was, as we have indicated, disqualified as
a witness in her own behalf against the executrix of her
mother's will under section 347 of the Civil Practice Act.
Leaving such evidence out of the case, the unsubstantial
evidence of ancient admissions of the mother to third
parties alone remains. Such evidence establishes, not an
agreement of Mrs. Lally with her daughter and step-
daughter to make mutual wills revocable on notice, but
an agreement for a consideration to make irrevocable
wills. Irrevocable wills, when regarded as contracts,
are not revocable on notice, except as the parties so
stipulate. Although it would have been much to plain-
tiff's advantage to establish a mutual agreement to make

irrevocable wills, she has made no attempt to show that such was her own agreement. Her own will was, according to her narrative, revocable on notice. She reserved to herself this important privilege. She must, in order to succeed, establish that the minds of the parties met and this she has failed to do. As a member of the bar, it should have occurred to her not to hazard her rights on the chances of death and uncertain memory but to preserve them in writing. (*Tousey* v. *Hastings,* 194 N. Y. 79.)

Further considerations tend to defeat plaintiff's cause of action. Assuming the contract to be as she testifies, the rule is established in this State that where either party to such a contract commits a breach thereof by subsequently executing without notice another will, devising and bequeathing his estate contrary to its terms and dies, the survivor, if any benefit has accrued to the deceased party by reason of the agreement, is upon proof of a continued performance in good faith upon her part, entitled to a specific performance of the contract. (*Hermann* v. *Ludwig,* 186 App. Div. 287, 306; affd., 229 N. Y. 544.) This right rests in the living as well as in the representatives of the dead. Some cases and authorities hold that equity will enforce the contract only against those who have had the benefit of it and taken property under a contractual will. " If the one who dies first has revoked his will, the survivor is not injured for he has the like power of revocation " says Alexander on Wills (§ 86). But plaintiff was injured by the breach of the agreement, if breach there was, because she gave up a claim for compensation for legal services on the strength of her mother's agreement and forbore to assert her rights. She was, therefore, entitled to notice of revocation of her mother's mutual will.

Knowledge, we take it, is the equivalent of notice. Plaintiff had knowledge that her mother had made a new will in ample time for her to change her own will or to take such other action as she might decide to take before

her mother's death. She was not in any way prejudiced or injured by the revocation. The revocable will had been revoked and she had knowledge of the fact. Continued performance of her contract on her part was no longer in reliance on the promise of her mother. She took the risk when she made her contract and we are unable to perceive any reason why a court of equity now should come to her relief.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur:

Judgment reversed, etc.